## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| CONNIE L. MOONEYHAM, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 3:21-cv-270 |
| v. | ) | |
| | ) | Judge Atchley |
| TONY PARKER, *et al.*, | ) | |
| | ) | Magistrate Judge McCook |
| *Defendants*. | ) | |

## TRIAL OPINION

This matter came before the Court for a bench trial on February 26, 2024. Plaintiff asserts violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), based on retaliation and reassignment. Upon consideration of the evidence presented at trial, the Court finds for Defendants and concludes that this matter must be **DISMISSED WITH PREJUDICE**.

### I.    PROCEDURAL BACKGROUND

Pro se Plaintiff Connie L. Mooneyham is an employee of the Tennessee Department of Correction ("TDOC"). On July 28, 2021, Plaintiff brought suit against Tony Parker, as Commissioner of the TDOC, and individual Defendants David Lane, Lisa Helton, Chris Hill, and Paige Saylor. [Doc. 1]. The Complaint asserts she was reassigned due to age discrimination and in retaliation for previously-filed discrimination complaints. She originally sought reinstatement to her former position, apology letters from each Defendant, and the costs of this action. [Doc. 1 at 7].

Defendants filed a Motion to Dismiss for Failure to State a Claim [Doc. 22], arguing that under the Constitution of Tennessee and state statute, Plaintiff's claims are barred in their entirety by the doctrine of sovereign immunity. Plaintiff filed an Amendment to Complaint and Response [Doc. 25], in which she abandoned her request for court costs and argued that her remaining

requests are for prospective injunctive relief. [Doc. 25 at 1]. Defendants then filed a Motion to Dismiss Amended Complaint [Doc. 37].

The Court granted in part and denied in part Defendants' motion to dismiss. [Doc. 43]. The Court first construed Plaintiffs' pleadings as asserting claims against all Defendants for discrimination and retaliation in violation of the Equal Protection Clause and the ADEA. [Doc. 43 at 5]. Second, the Court found that Plaintiff's claims against the TDOC were barred by the Eleventh Amendment and dismissed those claims. [*Id.* at 11]. Claims for monetary relief against the Defendants in their official capacities were likewise dismissed.

The Court denied the motion as to Plaintiff's suit for prospective injunctive relief against the individual Defendants in their official capacities. The Court explained that "[s]overeign immunity does not apply to official-capacity claims seeking prospective injunctive relief to end a continuing violation of federal law." [*Id.* at 8 (quoting *Rymer v. Lemaster*, No. 18-5655, 2019 WL 2583007, \*4 (6th Cir. Jan. 14, 2019))]. Rather, under the *Ex parte Young* doctrine, "a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law, regardless of whether compliance might have an ancillary effect on the state treasury." [*Id.* (quoting *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (internal citations omitted))]. And "reinstatement . . . constitutes prospective injunctive relief." [*Id.* at 9 (quoting *Whitfield v. Tennessee*, 639 F.3d 253, 257 (6th Cir. 2011)).

Because Plaintiff alleged ongoing discrimination and retaliation against her, the Court held that she adequately pleaded an *Ex parte Young* action for prospective injunctive relief against the individual Defendants in their official capacities. [Doc. 43 at 9].

On December 27, 2022, Defendants filed a Motion for Summary Judgment [Doc. 60]. That Motion was based on the same contention the Court rejected in its February 2022 Memorandum

2

Opinion: that reinstatement is not prospective injunctive relief and thus Plaintiff's claims are barred by the Eleventh Amendment. The Court denied the motion, explaining again that Plaintiff's claims for retaliation and discrimination against the Defendants in their official capacities were not barred by Eleventh Amendment Immunity because she seeks prospective injunctive relief, namely, reinstatement. [Doc. 79 at 4]. The Court noted that Defendants failed to challenge Plaintiff's claim on the merits. [*Id.* at 6-7].

The Court held a final pretrial conference on October 2, 2023, and a second final pretrial conference on January 8, 2024. [Docs. 99 & 112]. Pursuant to an Agreed Final Pretrial Order, the parties identified the causes of action as ADEA discrimination and retaliation. [Doc. 121 at 1]. The Court conducted a bench trial on February 26, 2024. [Doc. 122].

After Plaintiff rested her proof and Defendants read the parties' stipulations into the record, Defendants moved for involuntary dismissal under Rule 41(b) based on insufficiency of the evidence. [Trans. at 110]. The Court construes this as a motion for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c).[1] The Court heard argument from the parties and took the motion under advisement. Defendants renewed their motion at the close of evidence and that motion remains under advisement. [*Id.* at 130].

---

[1] Prior to 1991, Federal Rule of Civil Procedure 41(b) provided that in a non-jury trial, a defendant could move for dismissal after the close of plaintiff's evidence on the ground that the facts and the law showed plaintiff was not entitled to relief. § 2371 Involuntary Dismissal – Insufficiency of Evidence in a Nonjury Case, 9 Fed. Prac. & Proc. Civ. § 2371 (4th Ed.). The substance of that rule is now found in Federal Rule of Civil Procedure 52(c). Rule 52(c) provides: "If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under controlling law, can be maintained or defeated only with a favorable finding on that issue." *Id.*; *see In re Tincher*, 181 F.3d 104, *3 (6th Cir. 1999) (table) (motion for "directed verdict" in a bench trial is construed as a Rule 52(c) motion for judgment on partial findings). This Rule "authorizes the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence." Advisory Committee Note to the 1991 amendments to Rule 52, 134 F.R.D. at 690.

## II. FINDINGS OF FACT

Pursuant to Federal Rule of Civil Procedure 52(a)(1), the Court makes the following findings of fact.

### a. Stipulations

The parties stipulated to the following facts:

1. Plaintiff is a current employee of the Tennessee Department of Correction.

2. Plaintiff currently holds the position of Probation & Parole Officer 3 Enhanced.

3. Prior to June 11, 2021, Plaintiff held the position of Probation & Parole Officer 3 Enhanced, in which she interacted with offenders and the Court in court including offender attorneys, district attorneys, judges, community partners and offenders.

4. On June 11, 2021, Plaintiff was reassigned to complete reassessments on offenders in her position as Probation & Parole Officer 3 Enhanced.

5. As a result of her reassignment, Plaintiff is no longer a field officer.

6. Plaintiff's reassignment on June 11, 2021, did not affect her pay.

7. Plaintiff's reassignment did not change her health benefits or retirement benefits.

8. Plaintiff's reassignment did not change her work hours.

9. Plaintiff continued to report to the same office location after her reassignment— District 20 Knoxville Probation and Parole Office.

10. Paige Saylor did not reference Plaintiff's age as a reason for her reassignment.

11. At the time of her reassignment of duties, Plaintiff's chain of command at TDOC included: Probation Manager Erin Monroe, District Director Rebecca "Paige" Saylor, Correctional Administrator David Lane, Field Services Administrator Chris Hill, Assistant Commissioner Lisa Helton, and Commissioner Tony Parker.

4

[Doc. 121 at 3-4]. Based on the parties' stipulations and the Court's review of the record, these stipulations are accepted and incorporated as findings of fact.

In addition, the Court makes the following findings of fact pursuant to Federal Rule of Civil Procedure 52(a)(1). Citation is made to the certified copy of the trial transcript.[2]

On June 11, 2021, Plaintiff met with Erin Monroe and Paige Saylor. Erin Monroe was Plaintiff's assigned probation manager and Paige Saylor was a TDOC district director. [Trans. at 15, 42-43]. At the meeting, Plaintiff was informed she was being reassigned to a designated assessor position. A designated assessor is responsible for administering the validated needs risk assessment that all offenders are required to go through annually. [*Id.* at 119]. As a result of the reassignment, Mooneyham no longer had a "caseload" of offenders that she supervised. [*Id.* at 18].

Saylor told Plaintiff she was being reassigned based on complaints about her. [Trans. at 18, 43-44]. She explained that Lisa Helton made the reassignment decision. [*Id.* at 44-45]. Saylor stated it was not a disciplinary decision, so it could not be internally appealed. [*Id.*]. Plaintiff was not given any options other than reassignment. [*Id.*]. At the meeting, Plaintiff requested and was given her chain of command. [*Id.* at 44].

Plaintiff's immediate supervisor, Erin Monroe, testified that the chain of command is usually followed when a negative action is taken against an employee. [*Id.* at 20]. Monroe was not involved in the reassignment decision. [*Id.* at 16]. Saylor testified that while discussions are typically had with an employee's manager, decisions are not made with the manager. [*Id.* at 46].

Lisa Helton, Assistant Commissioner for Community Supervision, made the decision to reassign Mooneyham. [Trans. at 44, 57, 98-99, 117]. She testified that Mooneyham's reassignment was not a disciplinary or corrective action. [*Id.* at 104-5].

---

[2] Neither party requested the transcript, so it does not appear in the record at this time.

5

Helton directed the reassignment after receiving feedback from a group of probationers and/or parolees on a site visit at the Day Reporting Center ("DRC") in June 2021. [Trans. at 105-106; 117-118]. On the visit, she spoke to offenders about their experiences at the DRC. [*Id.* at 122-123]. The offenders indicated the officers at the DRC were supportive and helpful, and they felt they could go to them if they were experiencing problems and would get help. [*Id.* at 118-19]. They expressed concern about returning to regular supervision. [*Id.*].

The offenders began to talk about their experiences with Mooneyham as their officer, and how that was different from the supportive supervision they were receiving from the officers at the DRC. [*Id.* at 122-123]. The offenders had similar experiences with Mooneyham that, in Helton's view, suggested more of a punitive approach rather than an approach that supported successful discharge. [*Id.* at 118]. One offender related that Mooneyham said something like, "You have one foot in jail and it's my job to get your other foot in." [*Id.* at 124].[3] Helton did not have Mooneyham's name during some of this interaction and it is not clear from the record when she identified Mooneyham as the subject of the offenders' statements.

Helton did not have the names of the offenders she spoke with and did not refer their claims for investigation. [Trans. at 105-106]. She did not confirm that the offenders who commented on / complained about Plaintiff had in fact been supervised by Plaintiff. [Trans. at 125]. She testified that she did not know Mooneyham's age when she directed her reassignment, did not consider it in making her decision, and only discovered it after this lawsuit was filed. [*Id.* at 119-120]. After her conversations at the DRC, she instructed David Lane reassign Mooneyham to something other than a case carrier. [*Id.* at 118-119].

---

[3] Mooneyham claimed at trial that she never made this statement. She did not testify, however, so her unsworn denial has no evidentiary value. She also did not lodge a hearsay objection to Helton's recitation of what she heard from offenders. Regardless, it is irrelevant whether Mooneyham made this statement or not – the relevance of the statement is that Helton heard it, not whether it was true.

6

Carrie Brock was an Assistant Director of Human Resources at the TDOC between 2019 and 2021. [*Id.* at 61]. Brock received Mooneyham's complaint regarding her reassignment in June 2021. [*Id.* at 61-70]. According to Brock, Mooneyham filled out and sent in a form for an appeal. [*Id.* at 66-67]. The appeal and complaint process are two separate processes in the TDOC. [*Id.*]. The appeal form is a PDF document with text boxes that compress text size as more text is added. [*Id.*]. Brock testified that the font was so small on the appeal form that she could not read what Mooneyham had written. [*Id.*].

To process an appeal, a disciplinary letter is required to ensure the person submitting the form is eligible to file an appeal. [*Id.* at 66-67]. Because Mooneyham submitted an appeal form, Brock asked Saylor for a copy of the disciplinary action for Mooneyham. [*Id.*]. She was told that Mooneyham had not been disciplined. [*Id.*]. Brock emailed Mooneyham, advising that because she was not disciplined, it was not an appealable issue. [Doc. 88-12, Pl's Ex. 12].

Mooneyham subsequently sent Brock an email which referred to her issue as a complaint. [*Id.* at 67-68]. Brock requested Mooneyham send her complaint in a bigger format so that she could read and process it according to the complaint process, which is what she did. [*Id.*].

At some point prior to the reassignment, Saylor received complaints about Plaintiff from attorneys. [*Id.* at 46-47]. This appears to have occurred in or about 2019. [*Id.* at 32]. Saylor chose not to refer those complaints to human resources because she believed they were matters that could be handled directly with Ms. Mooneyham. [*Id.*].

Also prior to reassignment, in August 2019, Mooneyham filed a complaint with the Department of Human Resources, alleging Paige Saylor harassed her and created a hostile work environment on the basis of her age. [Trans. at 85-87; Def's Ex. 2, Doc. 87-2]. The allegations were not substantiated. [*Id.*].

7

During her time as district director, complaints were filed against Saylor. [Trans. at 42]. The substance of the complaints does not appear in the record, but they did not result in any findings against her. [*Id.*].

Harry Glen was a probation officer in 2021. [Trans. at 37-38]. His probation and parole manager was Brandon Glossup. [*Id.*]. Glossup testified that there were numerous issues with Mr. Glen, mostly based on job performance. [*Id.*]. Glen received progressive discipline over the course of 2 ½ years based on his failure to perform his job duties. [*Id.*]. Glossup reported the issues with Glen to his director, Paige Saylor. [*Id.*]. Glen was, at least at times, given options with regard to disciplinary action. [*Id.* at 45]. He was suspended at least once, but permitted to keep a parole caseload and reassigned to a different supervisor. [*Id.* at 38]. In Glossup's opinion, the chain of command was followed with regard to Mr. Glen. [*Id.* at 39]. Glossup further testified that during his time as a probation manager, he could not recall any instance when a field officer's caseload was involuntarily taken away as a disciplinary action. [*Id.* at 40].

Mooneyham filed a complaint with the Equal Opportunity Commission and was issued a Dismissal and Notice of Rights on September 15, 2021. [Pl's Ex. 13, Doc. 88-13].

III.    APPLICABLE LAW

Following a full trial on the merits, the Court cannot dismiss an employment discrimination claim on the grounds that a prima facie case has not been made. *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997). Instead, "[w]hen reviewing the facts of a discrimination claim after there has been a full trial on the merits, we must focus on the ultimate question of discrimination rather than on whether plaintiff made out a prima facie case." *Tisdale v. Fed. Exp. Corp.*, 415 F.3d 516, 529 (6th Cir. 2005); *Bilski v. McCarthy*, 790 F. App'x 756, 762 (6th Cir.

8

Case 3:21-cv-00270-CEA-JEM   Document 125   Filed 05/13/24   Page 8 of 22   PageID #: 945

2019) (once discrimination action proceeded to a bench trial, "the district court should not have revisited whether [plaintiff] established a prima facie case of age discrimination").

"But that is not to say that the evidentiary underpinnings of a plaintiff's *prima facie* case are irrelevant or insulated from examination by this court to aid its determination whether the evidence *in toto* is sufficient to support a finding of discrimination." *Noble*, 391 F.3d at 725. The Court may "consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue [of] whether the defendant's articulated legitimate, nondiscriminatory reason for the adverse employment action is pretextual." *Bilski*, 790 Fed. App'x at 762. "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

The same principles apply to a motion for directed verdict or similar defense motion made during trial: "[A] reviewing court should not focus on the elements of the prima facie case but should assess the ultimate question of discrimination." *Noble v. Brinker Intern., Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (quoting *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 599 (6th Cir. 2001)); *Litton v. Talawanda School District*, 485 F. App'x 804, 809 (6th Cir. 2012) (that the district court took defendant's motion for judgment as a matter of law under advisement following close of plaintiff's proof did not change the analysis).

## IV.    CONCLUSIONS OF LAW

### a.  ADEA Discrimination Claim

The ADEA makes it unlawful for an employer to fail or refuse to hire, discharge, or otherwise discriminate against any individual "with respect to his compensation, terms, conditions,

or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The protections of the ADEA apply only to individuals who are at least 40 years old. 29 U.S.C. § 631(a); *O'Conner v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (U.S. 1996) (protected class under ADEA is those 40 or older).

Plaintiff contends her reassignment to the designated assessor position was motivated by unlawful age discrimination. Plaintiff's central theory at trial was that while other employees who were disciplined were given options such as suspension, she had her caseload taken away and was not given any other options. Defendants argue she introduced no evidence of her age or the age of any potential comparators and that there was no evidence that the reassignment was based on her age.

i. Legal Framework and Prima Facie Elements

Cognizant of its obligation to assess the "ultimate question" of discrimination, the Court nonetheless looks to several elements of Plaintiff's prima facie case insofar as they are relevant to this question. As Plaintiff seeks to establish discrimination through circumstantial evidence, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) creates the applicable framework.[4] To establish a prima facie case of age discrimination, a plaintiff must show that (1) she was at least 40 years old at the time of the alleged discrimination; (2) faced an adverse employment action; (3) was otherwise qualified for the position; and (4) she was replaced by a substantially younger employee or additional evidence shows that the employer was motivated by age. *Deleon v. Kalamazo Cnty. Rd. Com'n*, 739 F.3d 914, 918 (6th Cir. 2014); *see Grosjean v. First Energy Corp.*,

---

[4] At least, it would seem, in part. While the *McDonnell Douglas* presumption "drops from the case," *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714-15 (U.S. 1983), the Sixth Circuit explained in *Avery Dennison* that the district court should have engaged in the entire burden-shifting analysis. *Avery Dennison Corp.*, 104 F.3d 858. The district court never ruled on defendant's burden to show a nondiscriminatory reason or plaintiff's burden to demonstrate pretext and ultimate discrimination. This failure rendered the record incomplete and prompted the Sixth Circuit to reverse and remand.

10

349 F.3d 332, 336 (6th Cir. 2003) ("In age discrimination cases, the protected class includes all workers at least 40 years old and the fourth element is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person.").

If the plaintiff makes her prima facie case, the burden shifts to defendant to proffer a legitimate, non-discriminatory reason for the adverse employment action. *Deleon*, 739 F.3d at 918. If the employer carries that burden, the burden shifts back to the plaintiff to establish that the employer's reason was pretextual. *Id.* A reason is pretextual if it (1) has no basis in fact, (2) was not the actual reason, or (3) was insufficient to explain the action. *Id*. Pretext is not a rigid test, but a commonsense inquiry. *Blizzard v. Marion Technical College*, 698 F.3d 275, 285 (6th Cir. 2012). Even if the employer's reason is shown to be pretextual, plaintiff must ultimately show that the real reason for the employment action was unlawful discrimination. *Noble*, 391 F.3d at 726.

First, Plaintiff introduced no evidence of her age. It seems apparent to the Court that a plaintiff cannot prevail on an ADEA claim unless she is within the class protected by the ADEA's provisions. Yet it is equally clear that the Court cannot dismiss the action based on a deficiency in Plaintiff's prima facie case. So the Court considers this omission in relation to Plaintiff's ultimate burden of proving age discrimination.

Second, Plaintiff did not identify a proper comparator. To do so, she had to show that the purported comparators "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Miles v. S. Central Human Resource Agency, Inc.*, 946 F.3d 883, 893 (6th Cir. 2020) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Plaintiff sought to show that TDOC's treatment of Paige Saylor and Harry Glen was different than her own. According to Plaintiff, both of these individuals were given "options" when disciplined while she was not. First, she did not show that either of these individuals were significantly younger than her – there is no evidence of Mooneyham, Saylor, or Glen's ages. Second, neither Saylor nor Glen had the same supervisor as Mooneyham. Saylor's direct supervisor was David Lane [Trans. at 54], while Glen's direct supervisor was Brandon Glossup [*Id.* at 37]. Helton, who decided to reassign Mooneyham, testified she was not familiar with the situation with Glen. [Trans. at 129]. As to Saylor, Plaintiff adduced no evidence about the substance of complaints against her or whether she was disciplined. The only evidence about Glen's conduct was that he had performance issues. While exact correlation is not required to show comparator status, Plaintiff failed to show that Saylor and Glen are proper comparators. Plaintiff did not argue or present evidence that she was replaced.[5]

### ii. Defendants' Proffered Reason for Reassignment & Pretext

Next, the Court turns to Defendants' proffered reason for the reassignment. Defendants contend Mooneyham was reassigned for a legitimate, nondiscriminatory reason: feedback from offenders suggested that Mooneyham took a punitive approach to supervision, rather than an approach that was supportive of successful discharge. [Trans. at 117-118]. Helton testified that she did not know or consider Mooneyham's age when she directed her reassignment and Mooneyham

---

[5] At trial, Defendants also challenged the second element of a prima facie case – adverse employment action. They argued that Mooneyham had not shown "a materially adverse change in the terms or conditions of employment." [Trans. at 112]. The Supreme Court of the United States recently clarified that a transfer does not have to cause a "materially adverse" change in the terms and conditions of a plaintiff's employment to be actionable under Title VII. *Muldrow v. City of St. Louis*, 144 S.Ct. 967 (2024). Hewing closely to the statutory text, the Court explained that a transferred employee "need show only some injury respecting her employment terms or conditions. The transfer must have left her worse off, but need not have left her significantly so." *Id.* at 977. This holding would seem to require rejection of Defendants' argument, at least as stated.

Given Plaintiff's inability to satisfy more straightforward elements of her prima facie case, the Court need not address the "adverse employment action" element.

12

presented no evidence to the contrary. [*Id.* at 119-120]. The evidence reflects that this decision was based on Helton's judgment regarding the preferred approach to supervision. So Defendants articulated a legitimate, nondiscriminatory reason for Plaintiff's reassignment.

Plaintiff challenged this reason on several grounds. First, she argued that no one investigated the offenders' claims or gave her a chance to respond. Helton admitted she did not have the names of the offenders, did not refer their concerns to anyone for investigation, and did not feel that their statements warranted further investigation. [Trans. at 105-7]. She testified that she took the offenders at their word and did not ask Mooneyham what she had or had not done. [*Id.* at 107]. She testified she did not believe that Mooneyham had a right to respond to their allegations "[b]ecause it is within the purview of the assistant commissioner to make duty assignments as he or she sees appropriate to the responsibilities of the position." [*Id.* at 121]. Helton testified she had "no reason to get their names." [*Id.* at 125].

In short, Helton reassigned Mooneyham from a long-held position based on offender comments that were not investigated. Other evidence suggests Mooneyham's approach to supervision had conflicted with that of her supervisors in the past, particularly Paige Saylor. But there is no evidence that Helton was aware of those conflicts. And Defendants identified the offender feedback as the sole basis for the reassignment. Helton testified that she did not have Mooneyham's name for some of this conversation, so it is not clear how or when she identified her as the subject of the offenders' comments.

Still, Helton explained that based on her assessment of the conversation, she took the offenders at their word. [Trans. at 106-7]. Given that multiple offenders shared similar experiences with Ms. Mooneyham, this was not patently unreasonable. [*See id.* at 118]. While Helton was a somewhat taciturn witness, the Court found her testimony to be credible. Employers are permitted

13

to make employment decisions that align with the organization's policies and philosophy, provided they are not otherwise discriminatory or unlawful. And Helton's explanation was consistent with the action she directed – she did not suspend Mooneyham or discipline her, as might be expected for poor performance or inappropriate conduct. Mooneyham's approach to supervision simply differed from the approach Helton wanted to see, so Helton moved her out of a case-carrying position. So while Helton's lack of investigation does give the Court pause, Plaintiff has not shown by a preponderance of the evidence that the proffered reason was based on inaccuracies, was insufficient to motivate reassignment, or was not the real reason for the reassignment.

### iii.   Plaintiff's Other Evidence of Discrimination

Even were Defendants' proffered reason unpersuasive, Plaintiff has not shown by a preponderance of the evidence that age discrimination was the true reason she was reassigned. "That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." *Noble*, 391 F.3d at 726. Rather, the factfinder "must *believe* the reason offered by the plaintiff, that is, it must believe that the plaintiff was the victim of intentional discrimination." *Id.*

First, as discussed above, Plaintiff failed to establish her age or identify similarly-situated younger employees who were treated more favorably than her. Second, Mooneyham did not establish that TDOC failed to follow usual procedures in her reassignment. [Trans. at 116]. Mooneyham argued that, according to Saylor, her entire chain of command approved the reassignment decision. This, according to Mooneyham, is evidence that she was being intimidated into taking no action. [*Id.*]. But that was not Saylor's testimony. Saylor testified that Assistant Commissioner Helton made the reassignment decision. [Trans. at 44, 46]. David Lane testified the same, explaining he was not involved in the decision. [*Id.* at 57]. Saylor recalled that after being

14

told she would be reassigned, Mooneyham asked for her chain of command and Saylor provided it. [*Id.*]. Contrary to Mooneyham's argument, the record did not establish that Saylor told Mooneyham the entire chain of command, up to the Commissioner of the TDOC, approved her reassignment.

Mooneyham did elicit testimony from Erin Monroe that the chain of command is usually followed when a negative action is taken against an employee. [Trans. At 19-20]. But Saylor clarified that while discussions are had with managers, decisions are not typically made with managers. [*Id.* at 46]. Regardless, the testimony uniformly showed that the TDOC did not consider reassignment to be a disciplinary or corrective action. So Mooneyham's argument that she was told her entire chain of command approved or participated in the decision, when in fact they had not, appears to be a misunderstanding, not evidence of discrimination. Even if Mooneyham were correct, it is not clear how a mischaracterization of the decision-making process would be evidence of age discrimination.

Next, Plaintiff attempted to show at trial that Paige Saylor treated her differently than younger employees. She argued that Saylor singled her out, harassing her about the reports she was writing. At one point, Saylor spoke with Mooneyham about recommending offenders for treatment at faith-based treatment facilities, which is discouraged under TDOC policy. [Trans. at 49]. Saylor testified that she told Mooneyham at the time that the recommendations she was making were beyond the scope of her position and education and that the recommendations and requirements she was making for her offenders were a liability for Mooneyham and for the TDOC. [*Id.* at 49- 50].

Saylor also testified that she addressed the entire enhanced team about their reports, requesting certain things be added or omitted. [*Id.* at 48]. She explained that other team members

adhered to those requests, but Mooneyham did not. [*Id.*]. Mooneyham showed that Saylor talked to her about an issue with a report that Mooneyham did not actually write, but that she represented in court. [Trans. at 48]. Saylor testified she did not recall ever learning that Mooneyham had not written the report. [*Id.*].

Mooneyham also questioned Saylor about complaints that attorneys had made about Mooneyham, asking why they were not referred for investigation. The substance of those complaints is not in the record. Saylor testified that investigation was not necessary because the issue could be resolved between her and Mooneyham. [*Id.* at 46-47].

Plaintiff argued that this treatment showed age discrimination by Saylor, in large part because she was the oldest officer on the enhanced team or was older than her coworkers. But Plaintiff introduced no evidence of her own age or that of any coworker. While she stated she was the oldest enhanced officer, she did so while making argument to the Court and questioning witnesses. The Court repeatedly cautioned Ms. Mooneyham that while she was free to testify on her own behalf, she could not testify while questioning a witness. [*See* Trans. at 35, 58, 124]. So there is no actual evidence in the record of anyone's age.

In the absence of any evidence about age, these incidents do not support Mooneyham's contention that she was reassigned for discriminatory reasons. If anything, they suggest there were multiple prior instances in which Mooneyham's approach conflicted with that of her supervisors or TDOC policy. While Mooneyham *argued* that she was targeted on these issues due to her age, she did not present *evidence* of her age or anyone else's. Nothing about these incidents, standing alone, suggest an age bias. Courts have certainly found that otherwise neutral policies can have a discriminatory impact. But there's no indication that happened here. Assuming Mooneyham is a member of a protected class under the ADEA, nothing about her protected status would have made

16

it more difficult for her to, for example, ensure that her treatment facility recommendations comported with TDOC policy. So Saylor's interactions with Mooneyham do not support her age discrimination claim.

Finally, Plaintiff attempted to show bias in the handling of her reassignment complaint. Initially, the action she challenges as discriminatory is her reassignment, so subsequent discrimination, even if proven, is at minimum less relevant. Regardless, Carrie Brock's testimony clearly established that she did not initially read Plaintiff's complaint because she could not – the font was too small. [Trans. at 66-67]. When Mooneyham later called her issue a complaint, Brock asked Mooneyham to resend it with larger font and processed it as a complaint. [*Id.*]. Nothing in Brock's testimony or the rest of the record suggests Plaintiff's appeal or later complaint were handled improperly. Saylor, Helton, and others uniformly testified that reassignment was not considered a disciplinary action, and so could not be appealed. Brock's testimony further made clear that Plaintiff could have – and eventually did – file an age discrimination challenge to her reassignment.

Significantly, these other allegations of discrimination are not directed at the actual decisionmaker, Lisa Helton. There is no evidence that Helton was aware of prior discussions or conflicts between Saylor and Mooneyham. There is no evidence that Helton consulted Saylor in making the decision. So even if Saylor was biased against Mooneyham because of her age, there is no evidence her alleged bias should be imputed to Helton. *See Noble*, 391 F.3d at 723 (to impute discriminatory intent of one employee to a decision-maker, "a plaintiff must submit competent evidence that one employee's discriminatory motives somehow influenced the decisionmaker" (citation omitted)).

Viewing the evidence as a whole, Plaintiff has not shown by a preponderance of the evidence that her reassignment was the result of unlawful age discrimination. Even if Defendants' proffered reason is somewhat week, "the plaintiff continues to bear the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (citing *Hicks*, 509 U.S. at 511). She has not carried that burden here. Defendants are entitled to judgment in their favor on her ADEA discrimination claim.

## V. ADEA RETALIATION

The ADEA makes it unlawful for an employer to discriminate against an employee because that person "opposed any practice made unlawful by this section," or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). When, as here, a plaintiff seeks to establish discrimination with circumstantial evidence, an ADEA retaliation claim is examined under the burden-shifting framework of *McDonnell Douglas* and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Willard v. Huntingdon Ford, Inc.*, 952 F.3d 795, 806 (6th Cir. 2020).

Under this framework, the plaintiff has the initial burden of establishing a prima facie case of retaliation by showing that (1) she engaged in protected activity, (2) her exercise of protected activity was known to the employer, (3) the employer later took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. *Imwalle v. Reliance Medical Prods.*, 515 F.3d 531, 544 (6th Cir. 2008). The burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the employment action. If the employer satisfies this burden, the burden returns to the plaintiff to show by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment action, but instead a pretext for retaliation.

"In order to prevail on a claim of retaliation where the defendant has articulated a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must prove not only that the defendant's proffered reason was a pretext, but that the real reason for the employer's action was intentional retaliation." *Imwalle*, 515 F.3d at 544. The trier of fact may, but need not, "infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

A plaintiff can rebut an employer's legitimate, nondiscriminatory reason and demonstrate pretext in three ways. *Imwalle*, 515 F.3d at 545 (citing *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). The plaintiff can show that the employer's stated reason (1) had no basis in fact, (2) was not the actual reason, or (3) was insufficient to explain the adverse action. *Id.* Throughout this framework, "plaintiff retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject the defendants' explanation and infer that the defendants intentionally discriminated against [the employee." *Id.* (cleaned up, citation omitted). The finder of fact "may not reject an employer's explanation . . . unless there is a sufficient basis *in the evidence* for doing so." *Id.* (quoting *Manzer*, 29 F.3d at 1083.

Here, Mooneyham argues she was reassigned in retaliation for prior complaints of age discrimination.[6] But Mooneyham failed to demonstrate a causal connection between her August 2019 age discrimination complaint and her June 2021 reassignment. She produced no other evidence of retaliatory motive. Again, a failure of plaintiff's prima facie case is not dispositive after a trial on the merits. Yet on the specific record before the Court, the absence of any evidence connecting Plaintiff's prior complaint to her reassignment is fatal to her retaliation claim.

---

[6] Reference was made at trial to a 2020 complaint, possibly made by all members of the enhanced team. But no evidence was introduced regarding this complaint or Mooneyham's role in it.

19

"Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020) (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)). But when "some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must offer additional evidence of causation." *Barrow v. City of Cleveland*, 773 F. App'x 254, 263-64 (6th Cir. 2019).

Mooneyham filed an age discrimination complaint against Saylor on August 27, 2019. [Trans. at 13, 112; Def's Ex. 2]. She was not reassigned until June 2021, a year and nine months later. [Stip. No. 3]. "[A] gap of approximately four-to-five months is insufficient, without additional evidence, to imply causation." *Barrow*, 773 F. App'x at 264. So Plaintiff has to present other evidence supporting a causal link to support an inference of discrimination.

"Other evidence supporting a causal link 'has commonly included evidence of additional discrimination occurring between the date at which the employer learned of the protected activity and the date of termination or other adverse employment action.'" *Barrow*, 773 F. App'x at 264 (quoting *Mickey*, 516 F.3d at 526). This may include increased scrutiny of the plaintiff's work, an unmanageable workload, "verbal threats," or "exceptional harshness" soon after the protected conduct. *Id.*

As discussed above, Plaintiff attempted to show that Paige Saylor treated her differently than younger employees. Some of this conduct was the basis for Plaintiff's 2019 complaint, so cannot be retaliation for the filing of that complaint. As the Court explained, none of these incidents have a discernible connection to Mooneyham's age. There is no evidence in the record to support

20

Plaintiff's claim that she was the oldest enhanced officer. And Saylor's testimony did not substantiate Plaintiff's theory that she was targeted or singled out. Indeed, when Plaintiff apparently called an offender an "idiot" in court, Saylor chose not to suspend her. [*Id.* at 31-32]. More obviously, Helton chose to reassign Plaintiff, not Saylor, and there is no evidence Helton was aware of any issues between Saylor and Mooneyham.

Plaintiff also suggested that how Carrie Brock handled her discrimination complaint after her reassignment suggested retaliation. Mooneyham emphasized that Brock did not even read her complaint before talking to Saylor. Brock agreed that she did not initially read it, explaining she could not due to the font size. And she reached out to Saylor because an appeal requires a disciplinary letter, so she could not process what she believed to be Mooneyham's appeal without one. So how her complaint was handled does not suggest retaliation.

Nor has Plaintiff shown that her reassignment was a pretext for retaliation. As the Court has explained, Defendants' proffered reason was a credible, though a somewhat weak justification for her reassignment. But even if she could show pretext, Plaintiff has to show more to prevail. She has to "prove, not only that the defendant's proffered reason was a pretext, but that the real reason for the employer's action was intentional retaliation." *Imwalle*, 515 F.3d at 544. Plaintiff has not shown that retaliation was a more likely motivation for her reassignment than Helton's disapproval of her "punitive" approach to supervision. *Id.* at 549. Finally, the Court again notes that Plaintiff introduced <u>no evidence of her age</u> in this age discrimination and retaliation case.

Plaintiff has not shown by a preponderance of the evidence that Defendants reassigned her in retaliation for her prior protected activity. The Court emphasizes that this is not due to her failure to make out a prima facie case for retaliation. It is because there is simply no evidentiary basis to

connect her August 2019 age discrimination complaint against Saylor with her June 2021 reassignment by Helton. Defendants are entitled to judgment on this claim.

## VI.     CONCLUSION

Plaintiff's frustration with her employer is in some ways understandable. She was transferred out of a job that she had long held and clearly loved, based on comments from offenders that no one attempted to verify. She was not given an opportunity to respond to their statements about her. Because the TDOC deemed the action non-disciplinary, she could not challenge the decision through the internal appeals process. Nor was she given any options other than reassignment. She was placed in a position she felt was less desirable and did what she could to challenge that decision.

But employment discrimination laws like the ADEA do not protect against general workplace unfairness. They are designed instead to remediate specific workplace harms, such as gender, race, and age discrimination. The evidence at trial failed to demonstrate that Mooneyham was reassigned because of her age or in retaliation for her prior complaints. Accordingly, this matter is **DISMISSED WITH PREJUDICE**.

Defendants' motion for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c) is **DENIED AS MOOT**.

A separate judgment shall enter.

**SO ORDERED.**

/s/ Charles E. Atchley, Jr.
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**